
NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar. No. 13644
ROGER W. WENTHE
Assistant United States Attorney
Nevada Bar No. 8920
U.S. Attorney's Office
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Ph: 702-388-6336
Email: roger.wenthe@usdoj.gov

*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| United States Of America, | Case No.: |
| Plaintiff, | **Complaint** |
| v. | |
| LASR Clinic Of Summerlin, LLC; Israel Villasenor; and Brian Rogers; | |
| Defendants. | |

Plaintiff the United States of America, by its undersigned counsel, alleges as follows:

## I. Introduction

1. The United States (Plaintiff) brings this action against defendants LASR Clinic of Summerlin, LLC (LASR); Israel Villasenor (Villasenor); and Brian Rogers (Rogers); to recover losses sustained by the Medicare Program.

2. LASR received over $600,000 in payments from the Medicare program for false claims from January 2010 through the present.

3. Medicare is a federally-funded program that provides medical insurance for certain items and services to qualified people by qualified professionals.

1

4. LASR, Villasenor and Rogers focused on maximizing Medicare and Medicaid reimbursement for as many patients as possible while disregarding patients' medical needs and regulatory requirements.

5. Specifically, since at least 2010, LASR, Villasenor and Rogers knowingly submitted or caused the submission of false claims to the Medicare program by: (a) claiming CPT Code 20926, which describes a tissue graft, for a service which was not a tissue graft; (b) claiming for services performed by someone other than the billing person; (c) claiming for services not rendered by any person; and (d) submitting or causing to be submitted fraudulent records and statements in support of their false claims for payment to the Medicare Program.

6. As a result of this conduct, LASR, Villasenor, and Rogers are liable under the False Claims Act, 31 U.S.C. § 3729, *et seq.* (the FCA), and the federal common law.

## II. Jurisdiction And Venue

7. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3732(a) and (b), and has supplemental jurisdiction to entertain common law and equitable claims pursuant to 28 U.S.C. § 1367(a).

8. This Court has personal jurisdiction over LASR, Villasenor, and Rogers under 31 U.S.C. § 3732(a), because they have adequate minimum contacts with the United States of America and the State of Nevada to make the assertion of personal jurisdiction over them reasonable.

9. Venue is proper in this action in the District of Nevada under 28 U.S.C. § 1391(b) – (c) and 31 U.S.C. § 3732(a), because LASR, Villasenor, and Rogers can be found in, reside in, and have transacted business within this Court's jurisdiction, and acts that they committed in violation of the FCA occurred within this district.

## III. The Parties

10. Plaintiff in this action is the United States of America, suing on behalf of the United States Department of Health & Human Services (HHS) and, specifically, its operating division, the Centers for Medicare & Medicaid Services (CMS). At all times

relevant to this Complaint, CMS was an operating division of HHS that administered and supervised the Medicare and Medicaid Programs.

11. Defendant LASR's operations are based in Las Vegas, Nevada. At all times relevant to this Complaint, LASR was engaged in the business of providing medical care to, among others, individuals who were Medicare beneficiaries.

12. Defendant Villasenor was, at all times relevant herein, a Doctor of Chiropractic licensed to practice in the State of Nevada, and an officer of LASR.

13. Defendant Rogers was, at all times relevant herein, a Doctor of Chiropractic licensed to practice in the State of Nevada, and an officer of LASR.

### IV. The Federal False Claims Act

14. The FCA provides, in part, that any entity that (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; or (2) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim, is liable to the United States for damages and penalties. 31 U.S.C. §§ 3729(a)(1)(A)-(B).

15. To show that an entity acted "knowingly" under the FCA, the United States must prove that the entity, with respect to the information: (1) has actual knowledge of the falsity of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information. The United States is not required to prove that the entity had the specific intent to defraud the United States. 31 U.S.C. § 3729(b)(1).

### V. The Medicare Program

16. Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq.*, establishes the Health Insurance for the Aged and Disabled Program, commonly referred to as the Medicare Program (or Medicare).

17. Medicare is a federal health insurance program for the elderly and disabled. Medicare Part A provides insurance coverage for inpatient hospital care, home health care, and hospice services. 42 U.S.C. § 1395c. Medicare Part B, which is involved in this action,

3

provides supplemental coverage for other types of care, including physician encounters and services. *Id.* §§ 1395j, 1395k.

18. A Medicare supplier, including a physician, is permitted to submit a claim for payment for certain procedures and services which are covered by Medicare Part B and which were actually performed by or incident to the services of that supplier. 42 CFR §§ 414.20, 414.34, 424.5, 424.33.

19. All healthcare suppliers, including LASR and its employed physicians, are obligated to comply with applicable statutes, regulations, and guidelines in order to be reimbursed by Medicare. When participating in Medicare, a supplier has a duty to be knowledgeable of the statutes, regulations, and guidelines for coverage of services.

20. Medicare reimburses suppliers for services rendered to Medicare beneficiaries by Medicare enrolled physicians. Claims for those services are submitted using five-digit billing codes issued by the American Medical Association (AMA) known as Current Procedural Terminology (CPT) codes. 45 CFR § 162.1002(a)(5), (c). During the time period relevant herein, the CPT Code books issued by the AMA contained the following instructions on their use:

- "Select the name of the procedure or service that accurately identifies the service performed. Do not select a CPT code that merely approximates the service provided. . . . Any service or procedure should be adequately documented in the medical record."
- "Specific guidelines are presented at the beginning of each of the sections. These guidelines define items that are necessary to appropriately interpret and report the procedures and services contained in that section."
- "For best coding results, you will need to use other reference materials in addition to your CPT coding books. These references include medical dictionaries and anatomy books."

21. The United States reimburses Medicare suppliers with payments from the Medicare Trust Fund, through CMS, as supported by American taxpayers. CMS, in turn,

4

contracts with Medicare Administrative Contractors (MACs), to review, approve, and pay Medicare bills, called "claims," received from health care suppliers like LASR and its employed physicians. In this capacity, the MACs act on behalf of CMS.

22. Payments are typically made by Medicare MACs directly to health care suppliers like LASR or its employed physicians rather than to the patient. The Medicare beneficiary usually assigns his or her right to Medicare payment to the supplier.

23. Because it is not feasible for the Medicare program, or its contractors, to review the patient files for the millions of claims for payments it receives from suppliers, the Medicare program relies upon the suppliers to comply with the Medicare requirements, and trusts the suppliers to submit truthful and accurate claims. Suppliers are reimbursed under Medicare Part B based upon their submission of a claim, typically in electronic form through a system known as Electronic Data Interchange (EDI).

24. All procedures or services for which a provider seeks Medicare reimbursement must be actually performed by the person reported to have performed them, or incident to that person's services, and must be reasonable and medically necessary as defined by CMS through regulations and other guidance.

25. CMS has established a Medicare Part B fee schedule, which sets the amount of payment Medicare will make for each procedure or level of care the supplier furnishes to a patient on a particular day. 42 C.F.R. § 414.20.

26. Once the supplier submits its claim to the MAC using EDI, if the patient has assigned payment to the supplier, the claims are paid directly to the supplier.

27. A provider's EDI number and password serve as a provider's electronic signature. A supplier who submits claims using EDI agrees:

    That it will submit claims that are accurate, complete, and truthful;

    That it will retain all original source documentation and medical records pertaining to any such particular Medicare claim for a period of at least 6 years, 3 months after the bill is paid; . . .

> That the CMS-assigned unique identifier number (submitter identifier) or NPI [National Provider Identifier] constitutes the provider's legal electronic signature and constitutes an assurance by the provider that services were performed as billed; . . . and
>
> That it will acknowledge that all claims will be paid from Federal funds, that the submission of such claims is a claim for payment under the Medicare program, and that anyone who misrepresents or falsifies or causes to be misrepresented or falsified any record or other information relating to that claim that is required pursuant to this agreement may, upon conviction, be subject to a fine and/or imprisonment under applicable Federal law . . . .

Medicare Claims Processing Manual, ch.24, secs. 30.1, 30.2.A.5, 7, 10, 12.

28. Federal law requires suppliers like LASR that receive funds under the Medicare program to report and return any overpayments within specified time periods. 42 U.S.C. § 1320a-7k(d).

### VI.   LASR's Scheme of Submitting False and Fraudulent Claims

29. LASR and its contracted physicians and Villasenor and Rogers knowingly submitted or caused to be submitted false or fraudulent claims to Medicare for procedures and services that were either not performed as billed, not performed by the person submitting the bill, or not performed by anyone.

**A.   The Submission of False Claims Using CPT Code 20926**

30. During the time period relevant herein, CPT Code 20926 described the following procedure: "Tissue grafts, other (e.g., paratenon, fat dermis)." The AMA note adjacent to CPT Code 20926 stated: "(For harvesting, preparation, and injection[s] of platelet-rich plasma, use 0232T)."

31. Under Medicare regulations, a claim for performing CPT Code 20926 could be submitted to Medicare by a physician but not by a Doctor of Chiropractic like Villasenor or Rogers. LASR therefore retained physicians to perform the services which would be claimed using CPT Code 20926.

6

32. Villasenor and Rogers instructed physicians employed by LASR to perform a service for their patients consisting of drawing, centrifuging, and then reinjecting a portion of a patient's own blood. This procedure is known as prolotherapy. This procedure did not satisfy the descriptor for CPT Code 20926, because it was not a tissue graft. This procedure also was not covered by Medicare, because prolotherapy is not covered by Medicare. Medicare National Coverage Decision 150.7.

33. Villasenor and Rogers further instructed LASR physicians to falsely submit claims to the MAC for prolotherapy, a noncovered service, by using CPT Code 20926, a code which was covered by Medicare when a tissue graft was performed. Villasenor and Rogers further instructed LASR physicians to place false and misleading statements in their medical records to create the false impression that the procedure described by CPT Code 20926 had actually been performed when it had not, including the following language: "implantation of Erythrocytes to seal, fill, and replace lost or damaged tissues."

34. The physicians employed by LASR complied with these instructions by Villasenor and Rogers and submitted claims to the MAC. When these physicians received reimbursement from the MAC, they shared the reimbursement with LASR according to a pre-established formula.

35. The claims submitted to the MAC by the LASR physicians using CPT Code 20926 were false and fraudulent because they used a CPT Code which did not describe the non-covered prolotherapy service they had performed. The false statements in these claims were material to the MAC's payment decision, because if the submitters had truthfully stated that the prolotherapy procedure they performed was not covered by Medicare, the MAC would not have paid for those services. LASR, Villasenor, and Rogers had actual knowledge that these false claims had been submitted, and either had actual knowledge that the claims were false, or acted in deliberate ignorance of whether the claims were false, or acted in reckless disregard of whether the claims were false.

36. Examples of false claims submitted by or on behalf of LASR physicians and caused to be submitted by Villasenor and Rogers which improperly used CPT Code 20926 include the following:

- On or about October 26, 2016, Graham Wilson, M.D. (Wilson), a LASR physician, submitted a claim to the MAC falsely stating that he had performed CPT Code 20926 on LASR patient G.B. on October 7, 2016; the MAC approved the claim and paid $348.30 for this procedure.
- On or about November 22, 2016, Wilson submitted a claim to the MAC falsely stating that he had performed CPT Code 20926 on LASR patient G.B. on November 3, 2016; the MAC approved the claim and paid $348.30 for this procedure.

37. The United States suffered damage by paying for claims submitted by LASR physicians using CPT Code 20926 that were actually not covered by Medicare.

**B.  The Submission of False Claims Not Performed by the Claiming Physician**

38. During the time period relevant herein, Villasenor and Rogers instructed LASR physicians or LASR billing personnel to submit claims to the MAC for services which had been performed by a supplier other than the supplier whose name appeared on the claim as the supplier performing the service.

39. The physicians and billers employed by LASR complied with these instructions by Villasenor and Rogers and submitted claims to the MAC.  When these physicians received reimbursement from the MAC, they shared the reimbursement with LASR according to a pre-established formula.

40. The claims submitted to the MAC by the LASR physicians falsely identifying the supplier were false and fraudulent because they falsely stated the identity of the person allegedly performing the services. The false statements in these claims were material to the MAC's payment decision, because if the submitters had truthfully stated that the procedure had not been performed by the submitting biller or incident to that biller's services, the MAC would not have paid the submitting biller for those services.

8

LASR, Villasenor and Rogers had actual knowledge that these false claims had been submitted, and either had actual knowledge that the claims were false, or acted in deliberate ignorance of whether the claims were false, or acted in reckless disregard of whether the claims were false.

41. Examples of false claims submitted by or on behalf of LASR physicians and caused to be submitted by Villasenor and Rogers falsely identifying the supplier include the following:

- On or about October 20, 2016, Wilson submitted a claim to the MAC falsely stating that he had performed a series of procedures on LASR patient G.B. on September 29, 2016, when in fact no record of Wilson performing such a service existed, and instead a pre-prepared record stated that services had been performed on that date on patient G.B. by Jacqueline Leventhal, D.O. (Leventhal), a LASR physician; the MAC approved these claims and paid a total of $457.92 for these procedures.
- On or about November 8, 2016, Wilson submitted a claim to the MAC falsely stating that he had performed a series of procedures on LASR patient G.B. on October 20, 2016, when in fact no record of Wilson performing such a service existed, and instead a pre-prepared record stated that services had been performed on that date on patient G.B. by Leventhal; the MAC approved these claims and paid a total of $457.92 for these procedures.

42. The United States suffered damage by paying for claims submitted by LASR physicians that were not actually performed by the billing supplier.

**C.  The Submission of False Claims For Services Not Performed**

43. During the relevant time period herein, CPT Code 64450 described the following procedure: "Injection, anesthetic agent; other peripheral nerve or branch." This injection procedure is commonly referred to as a nerve block injection.

44. During the time period relevant herein, Villasenor and Rogers instructed LASR physicians or LASR billing personnel to submit claims to the MAC for performing

nerve block injections on LASR patients which had not actually been performed by any supplier.

45. The physicians and billers employed by LASR complied with these instructions by Villasenor and Rogers and submitted claims to the MAC. When these physicians received reimbursement from the MAC for nerve block injections, they shared the reimbursement with LASR according to a pre-established formula.

46. The claims submitted to Medicare by the LASR physicians for nerve block injections were false and fraudulent because they falsely stated that this procedure had been performed when it had not in fact been performed. The false statements in these claims were material to the MAC's payment decision, because if the submitters had truthfully stated that the procedure they claimed to have performed had not been performed, the MAC would not have paid for those services. LASR, Villasenor, and Rogers had actual knowledge that these false claims had been submitted, and either had actual knowledge that the claims were false, or acted in deliberate ignorance of whether the claims were false, or acted in reckless disregard of whether the claims were false.

47. Examples of false claims submitted by or on behalf of LASR and caused to be submitted by Villasenor and Rogers which improperly used CPT Code 64450 include the following:

- On or about October 26, 2016, Wilson submitted a claim to the MAC falsely stating that he had performed CPT Code 64450 on LASR patient G.B. on October 7, 2016; the MAC approved the claim and paid $32.28 for this procedure.
- On or about November 22, 2016, Wilson submitted a claim to the MAC falsely stating that he had performed CPT Code 64450 on LASR patient G.B. on November 3, 2016; the MAC approved the claim and paid $32.28 for this procedure.

48. The United States suffered damage by paying claims submitted by LASR physicians for services that were not actually performed.

**First Cause Of Action**

**(False or Fraudulent Claims)**

**(False Claims Act-31 U.S.C. § 3729(a)(1)(A))**

49. The United States re-alleges and incorporates by reference the allegations of paragraphs 1 through 48.

50. By virtue of the acts described above, LASR, Villasenor, and Rogers knowingly presented or caused to be presented to an officer or employee of the United States false or fraudulent Medicare claims for payment or approval, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A); that is, LASR, Villasenor, and Rogers knowingly made or presented, or caused to be made or presented, to the United States claims for payment for services that had not been performed as claimed.

51. By reason of the foregoing, the United States suffered actual damages in an amount to be determined at trial and therefore is entitled to treble damages under the False Claims Act, plus civil penalties of not less than $11,181 and not more than $22,363 per false claim. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes), and 28 CFR § 85.5, civil penalties were adjusted to $11,181 to $22,363 for penalties assessed after January 29, 2018.

**Second Cause Of Action**

**(False Statements)**

**(False Claims Act-31 U.S.C. § 3729(a)(1)(B))**

52. The United States re-alleges and incorporates by reference the allegations of paragraphs 1 through 51.

53. By virtue of the acts described above, LASR, Villasenor, and Rogers knowingly presented or caused to be presented to an officer or employee of the United States false or fraudulent Medicare claims for payment or approval, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B); that is, LASR, Villasenor and Rogers knowingly

made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.

54. By reason of the foregoing, the United States suffered actual damages in an amount to be determined at trial and therefore is entitled to treble damages under the False Claims Act, plus civil penalties of not less than $11,181 and not more than $22,363 per false claim. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes), and 28 CFR § 85.5, civil penalties were adjusted to $11,181 to $22,363 for penalties assessed after January 29, 2018.

## Third Cause Of Action

### (Payment by Mistake)

55. The United States re-alleges and incorporates by reference the allegations of paragraphs 1 through 54.

56. This is a claim by the United States for the recovery of monies paid directly or indirectly to LASR, Villasenor, and Rogers by mistake for Medicare services that were not performed as claimed.

57. As a consequence of the conduct and the acts set forth above, LASR, Villasenor, and Rogers were paid directly or indirectly by mistake by the United States in an amount to be determined which, under the circumstances, in equity and good conscience, should be returned to the United States.

## Fourth Cause Of Action

### (Unjust Enrichment)

58. The United States re-alleges and incorporates by reference the allegations of paragraphs 1 through 57.

59. This is a claim by the United States for recovery of monies by which LASR, Villasenor, and Rogers have been unjustly enriched.

60. By virtue of the conduct and the acts described above, LASR, Villasenor, and Rogers were unjustly enriched at the expense of the United States in an amount to be

determined, which, under the circumstances, in equity and good conscience, should be returned to the United States.

**Prayer For Relief And Jury Demand**

WHEREFORE, the United States respectfully prays for judgment in its favor as follows:

    a.    As to First and Second Causes of Action (False Claims Act), against LASR, Villasenor, and Rogers, for: (i) statutory damages in an amount to be established at trial, trebled as required by law, and such penalties as are required by law; (ii) the costs of this action, plus interest, as provided by law; and (iii) any other relief that this Court deems appropriate, to be determined at a trial by jury.

    b.    As to the Third Cause of Action (Payment Under Mistake of Fact), for: (i) an amount equal to the money paid by the United States through the Medicare Program to, and illegally retained by, LASR, Villasenor, and Rogers, plus interest; (ii) the costs of this action, plus interest, as provided by law; and (iii) any other relief that this Court deems appropriate, to be determined at a trial by jury.

    c.    As to the Fourth Cause of Action (Unjust Enrichment), for: (i) an amount equal to the money paid by the United States through the Medicare Program to LASR, Villasenor, and Rogers, or the amount by which LASR, Villasenor, and Rogers were unjustly enriched, plus interest; (ii) the costs of this action, plus interest, as provided by law; and (iii) any other relief that this Court deems appropriate, to be determined at a trial by jury.

    d.    And for all other and further relief as the Court may deem just and proper.

The United States hereby demands a jury trial on all claims alleged herein.

Respectfully submitted this 19th day of March 2019.

                                    NICHOLAS A. TRUTANICH
                                    United States Attorney

                                    *s/ Roger W. Wenthe*
                                    ROGER W. WENTHE
                                    Assistant United States Attorney